UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| STERLING INTERNATIONAL, INC., a Washington corporation, | ) ) ) | |
| Plaintiff, | ) ) | CV-06-0059-AAM |
| vs. | ) ) | |
| VIRTOOLS CANADA, INC., a Canadian corporation, and VIRTOOLS, S.A., a French corporation, | ) ) ) ) | ORDER DENYING DEFENDANTS' MOTION TO DISMISS |
| Defendants. | ) ) ) | |

BEFORE THE COURT is the Defendants' Motion to Dismiss (Ct. Rec. 5) pursuant to Fed. R. Civ. Proc. 12(b)(3). On July 11, 2006, the Court heard oral argument. Jeff Supinger appeared on behalf of Plaintiff and John R. Nelson appeared on behalf of the defendants. Upon due consideration of the written and oral arguments of the parties, the court DENIES the motion as set forth below.

**I. Introduction**

This is a civil suit for money damages for breach of contract and for violation of the Washington's Uniform Trade Secrets Act. Plaintiff specifically alleges untimely performance and improper disclosure. Plaintiff is a Washington corporation. Defendant Virtools, S.A. is a French corporation and is the parent company of Defendant Virtools Canada, Inc., a Canadian corporation. The Court has jurisdiction over Plaintiff's controversy pursuant to 28 U.S.C. § 1332(a)(2).

///

///

///

Order - 1

## II.    Facts

The following fact are undisputed unless otherwise noted.  Plaintiff Sterling International Inc. ["Sterling"] is a corporation that produces and sells insect traps.  In early 2004, Sterling set out to create a fully interactive computer video game called "POD" intended to teach children about insect behavior.  Defendant Virtools Canada ["Virtools"] sells a software development program which allows computer programmers to develop the interactive and three-dimensional aspects of a computer program.  In addition, Virtools also licenses a game engine, the "Virtools Stand Alone Player", which allows the computer program's user to utilize and display the interactive 3-D functions of the program in real time.

In early 2004, Sterling contracted with software developer ARO Design for the computer game's development.  In order to provide ARO Design the necessary license to use Virtools' software, in March 2004, Sterling entered into a written Licensing Agreement ["the Licensing Agreement"] with Virtools for the use of the Virtools Stand Alone Player and the Virtools' Software Development Kit.[1]  The agreement contains the following choice of law, forum selection, and good-faith negotiation clause:

> This Agreement shall be governed by Canadian law. *Any disputes arising from this Agreement* shall be the exclusive jurisdiction of the Tribunal of Commerce of Montreal.  In the event a dispute arises between the parties concerning this Agreement, a non-waivable pre-condition to submitting the dispute to the above Tribunal, is that the parties have, for at least 30 days, engaged in substantive good faith negotiation to resolve the dispute between themselves.

Delporte Declaration, Exhibit 3 at 40 (emphasis added).

After work had commenced on the computer game, ARO Design informed Sterling that it was unable to build a discrete portion of the game's computer code called the character controller building block ["CCBB"], which is used to manipulate

---

[1] Also integrated into the Licensing Agreement as "Annex 2" is a Separate Licensing Agreement between Virtools S.A. and the so called "end-user" of Virtools products.  This agreement also contains a forum selection clause and choice of law clause providing for venue for "any dispute" in Montreal Canada with French law governing.  Delporte Declaration, Exhibit 3 at 46.

1  the insect characters within the game's virtual environment.  Virtools then informed
2  Sterling it could create that portion of the game program in place of ARO Design and
3  submitted a written proposal to Sterling for the development of the CCBB at the cost
4  of $32,000.00.  On August 26, 2004, Sterling approved Virtools' "Sales Proposal for
5  Custom C++ Development: Insect Character Controller Building Block" ["CCBB
6  Sales Agreement"].    See Delporte Declaration, Exhibit 5.    The CCBB Sales
7  Agreement does not contain a forum selection clause or any provision governing
8  disputes.

9        All of Sterling's claims in the present lawsuit concern Virtools' duties under the
10  CCBB Sales Agreement, not the Licensing Agreement.    Sterling alleges the
11  defendants have breached their agreement by failing to timely deliver the CCBB code
12  and by disseminating the CCBB code on a web-site.  Defendants filed a Motion to
13  Dismiss on May 18, 2006.  Defendants argue the CCBB Sales Agreement arises from
14  the Licensing Agreement and that the venue provision of the Licensing Agreement
15  should govern this action. Plaintiff contends the CCBB Sales Agreement is a separate
16  contract which is not subject to the forum selection clause of the Licensing
17  Agreement.

18  **III.  Motion to Dismiss Standard**

19        A motion to dismiss based on a forum selection clause is treated as a motion to
20  dismiss for improper venue and is brought under Rule 12(b)(3) of the Federal Rules
21  of Civil Procedure. *Argueta v. Banco Mexicano*, 87 F.3d 320, 324 (9th Cir. 1996).
22  Unlike the case in a motion to dismiss based on Rule 12(b)(6), in a Rule 12(b)(3)
23  motion a plaintiff's pleadings are not accepted as true and a court may consider facts
24  outside the pleadings. *Id.* (citing Supreme Court cases). "[I]n the context of a Rule
25  12(b)(3) motion based upon a forum selection clause, the trial court must draw all
26  reasonable inferences in favor of the non-moving party and resolve all factual
27  conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d
28  1133, 1138 (9th Cir. 2004) (finding rule for viewing facts under Rule 56 summary
    judgment motion applies in Rule 12(b)(3) case).

**IV. Analysis**

The Court need not discuss at length the law of forum selection clauses as neither the existence nor validity of the clause is in controversy at this time. The parties acknowledge the Licensing Agreement in this case contains a forum selection clause and the CCBB Sales Agreement does not. The defendants also concede this case is based entirely upon the defendants' alleged failure to comply with the CCBB Sales Agreement. The sole question for the Court to resolve is whether the parties' forum selection clause in the Licensing Agreement applies to the Sterling's claims under the CCBB Sales Agreement.

Federal law applies in the analysis of the effect and scope of a forum selection clause. *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). "The scope of a forum selection clause is a contractual question that requires the courts to interpret the clause and, where ambiguous, to consider the intent of the parties." *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG,* 121 F.3d 24 (2nd Cir 1997). The court must examine the language of the contract to determine which causes of action are governed by the forum selection clause. *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 220 (5th Cir. 1998), cert. denied, 525 U.S. 1055 (1998). Courts will not enforce a forum selection clause when the subject of the dispute does not arise from the contract containing the clause. *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 293 (3d Cir. 1994) (refusing to apply a forum selection clause from one contract between the parties to a dispute arising out of a second contract). If the substance of the plaintiff's claims does not fall within the scope of the forum selection clause, the clause cannot apply.

The Licensing Agreement limits the application of the forum selection clause to "[a]ny disputes arising from *this Agreement."* Delporte Declaration, Exhibit 3 (emphasis added). In order to apply the forum selection clause *as written* to this dispute, this Court would have to find that the terms of the Licensing Agreement and the CCBB Agreement are part of a single contract between the parties. Only then could the forum selection clause's self-limiting application to "this Agreement" refer

to both the Licensing Agreement and the CCBB Sales Agreement, and thus encompass this dispute. However, The Licensing Agreement, by its terms, is a fully integrated contract.[2] Thus, the scope of the forum selection clause includes only disputes arising from the rights and obligations created by the License Agreement, which this dispute is not.

Defendants urge the Court to consider extrinsic evidence arguing it demonstrates the parties intended the forum selection clause to broadly apply to disputes which "'arise from' *the relationship established* by the Licensing Agreement." Defendants' Reply at 9 (emphasis added). While extrinsic evidence of intent may be considered by the Court, extrinsic evidence may be used only to clarify the meaning of the words; it may not be considered for the purpose of varying the terms of the contract. *Berg v. Hudesman*, 115 Wash.2d 657, 801 P.2d 222 (1990). Here, defendants are not attempting to elucidate the meaning of the words actually employed in the agreement, but rather attempt to import into the writing an intention not expressed therein. Such use of extrinsic evidence is expressly prohibited by *Berg*. *Berg*, 115 Wash.2d at 669, 801 P.2d 222.

Defendants make the similar argument that because Virtools and Sterling's relationship exists only because of its connection through the licensing agreement, this dispute therefore "arises from" the Licensing Agreement. This argument has no merit. In a case involving two separate, but related contracts, the "arising from" language in one contract does not necessarily apply to claims arising out of the second contract. This is a form of "but-for" analysis which courts have rejected as an interpretation of the "arising from" or "arising out of" language in forum selection clauses. *Omron Healthcare v. Maclaren Exports*, 28 F.3d 600, 602 (7th Cir. 1994) (*citing Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804 (1986); *Spearman v. Exxon Coal USA,*

---

[2] The Licensing Agreement provides an integration clause: "Together with its annexes, the present Agreement constitutes the entirety of the agreement between the parties...This Agreement may be amended only by a written instrument signed by the parties hereto..." Delporte Declaration, Exhibit 3.

1  *Inc.*, 16 F.3d 722 (7th Cir.1994)).  These "are familiar phrases, and courts have

2  resisted the siren call of collapsing them to but-for causation." *Omron*, 28 F.3d at 602.

3       Finally, defendants argue the extrinsic evidence offered proves Sterling's

4  "unequivocal understanding that the claims in this action were subject to the...forum

5  selection clause."  Otherwise stated, defendants' argument is that the parties intended

6  to incorporate the terms (or at least the forum selection clause) of the Licensing

7  Agreement into the CCBB Sales Agreement.  Parties are not allowed to smuggle in

8  parol evidence to add a term to an integrated contract, in defeat of the parol evidence

9  rule.  If the writing is a complete integration – the complete and final statement of the

10  parties agreement on the subject – any terms and agreements that are not contained in

11  it are disregarded.  *Morgan v. Stokely-Van Camp, Inc.,* 34 Wash.App. 801, 807, 663

12  P.2d 1384 (1983) (quoting 5 R. Meisenholder, Washington Practice § 121, at 125

13  (1965)).  If it is not intended to be the complete expression of the parties' intent-in

14  other words, if it is only partially integrated-the writing may be supplemented or

15  replaced by consistent terms or agreements shown by a preponderance of the

16  evidence.  *Id.*

17       To determine whether a writing is a complete or partial integration, a court must

18  engage in a fact-specific analysis.  Because a writing can not prove its own

19  completeness, wide latitude is accorded to the Court to consider the circumstances

20  surrounding its execution bearing on the intention of the parties.  *See M.A. Mortenson*

21  *Co. v. Timberline Software Corp.*, 140 Wn.2d 568, 579, 998 P.2d 305 (2000).  In

22  determining whether an agreement is completely or partially integrated "the court may

23  consider evidence of negotiations and circumstances surrounding the formation of the

24  contract." *Denny's Restaurants, Inc. v. Security Union Title Ins. Co.,* 71 Wash.App.

25  194, 202, 859 P.2d 619 (1993)(citing Restatement (Second) of Contracts § 214).

26       The Court's review of the record reveals no substantial evidence that the parties

27  did not intend the CCBB Sales contract to be the embodiment of their complete and

28  final expression on the subject of the development of the CCBB code.  In fact, in the

days just prior to formation of the agreement, Sterlings' representative Bob Loomis

1    evidenced his desire to form a separate contract when he wrote he was "of the view
2    that rather than amend the license of March 2004, it would be preferable to sign a
3    separate Development and License Agreement." Delporte Declaration, Ex. 4 (Loomis
4    Email Aug. 10, 2004).  While the Court acknowledges the CCBB Sales Agreement
5    is different in form than previously negotiated agreements, it relates to software
6    development rather than licensing.

7         Even assuming the agreement was only partially integrated and the Court were
8    to consider the extrinsic evidence offered, the Court must resolve all factual conflicts
9    in favor of the non-moving party.  *Murphy,* 362 F.3d at 1138. Construing the facts in
10   the light most favorable to Sterling, the record does not support the unequivocal
11   conclusion that the parties intended the sales agreement to be subject to the licensing
12   agreement's forum selection clause.  In fact, the evidence which does appear on the
13   record strongly intimates that Sterling desired and received a separate agreement.
14   While defendant proffers evidence suggesting Loomis may have at one time *thought*
15   the Licensing Agreement's terms applied to this dispute, such evidence is irrelevant
16   to the question of what the parties agreement actually was.  Notably, there is no
17   evidence suggesting the parties agreed the terms of the Licensing Agreement would
18   apply to the CCBB Sales Agreement.

19   **V.    Conclusion**

20        All of Sterling's claims in the present lawsuit concern Virtools' duties under the
21   CCBB Sales Agreement, not the Licensing Agreement.  There has been no suggestion
22   that plaintiff's causes of action in this case depend upon the enforcement or
23   interpretation of the Licensing Agreement.   The language of the Licensing
24   Agreement's forum selection clause is unambiguous and does not lend itself to more
25   than one reasonable interpretation.  Finally, the extrinsic evidence offered by the
26   defendants does not provide a justification for this Court to import the forum selection
27   clause into the CCBB Sales Agreement.  Notwithstanding the possibility that the
28   defendants may be forced to defend related lawsuits in a different forum, venue

Order - 7

properly resides in Eastern Washington as this case presently stands. Accordingly, defendants' motion to dismiss (Ct. Rec. 5) is **DENIED**.

**IT IS SO ORDERED.**  The District Executive is directed to enter this order and furnish copies to counsel.

**DATED** this  17th  day of July, 2006.


s/   Alan A. McDonald
ALAN A. McDONALD
SENIOR UNITED STATES DISTRICT JUDGE

Order - 8